IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA CORDOVA, on his own behalf,
and on behalf of all others similarly situated,

      Plaintiff,

v.                                         1:16-cv-00460-KG-KBM

JODY JENKINS and
JENKINS, WAGNON & YOUNG, P.C.,

      Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS
AND MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.  Introduction

In hundreds of New Mexico debt collection cases, Defendants, a Texas law firm and one of its attorneys, obtained substantial awards of attorney's fees by submitting fraudulent fee affidavits.  Defendants run a "collection mill" that engages in high volume litigation typically resulting in default judgments.  In case after case, Defendants submitted an identical affidavit claiming that attorney Jody Jenkins performed exactly 4.25 hours of attorney work, and was entitled to exactly $1,062.50 in attorney's fees.  Exhibit 1 (fee affidavit).  Each affidavit uniformly misrepresented that Mr. Jenkins performed an identical set of tasks, including 1 hour of attorney time spent in "miscellaneous communications with client" and .5 hours to "file complaint / correspond with process server."  In reality, Mr. Jenkins and his firm expended little or no attorney time in each case.  At $250 per hour, Defendants' misrepresentations quickly added up to serious injury to their victims.

1

Defendants have obtained hundreds of thousands of dollars in bogus attorney's fee awards, and have collected on many of them.  To this day, the vast majority of Defendants' victims have no idea that they were defrauded.  In this lawsuit, Plaintiff Joshua Cordova seeks to bring Defendants' fraud to light, and to obtain remedies for these unwitting victims.  Proceeding as a class action is the only way that justice can be done:

> In a large and impersonal society, class actions are often the last barricade of consumer protection.  . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups.  The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting.  The alternatives to the class action  --  private suits or governmental actions  --  have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective.  The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

*Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760, 764, 766 (1st Dist. 1991).

Defendants, in their Rule 12(b)(6) Motion to Dismiss and Motion for Judgment on the Pleadings ("Motion to Dismiss"), ask the Court to rule that Defendants' victims have no effective remedy.  Defendants claim that the Fair Debt Collection Practices Act ("FDCPA") has no application to their campaign of fraudulent debt collection.  Even if there were a claim under the FDCPA, Defendants argue that any effort to combat their deception is barred by res judicata and collateral estoppel.  Defendants argue that even if they have grossly benefitted by committing fraud on a grand scale, their victims are limited to piecemeal motions to set aside the underlying state debt collection judgments using Rule 1-060 N.M.R.A.  Of course, this would mean that Defendants would never be held responsible for their actions.

Defendants are wrong, and this Court is empowered to hold them responsible.  The FDCPA specifically creates a cause of action to penalize fraudulent conduct by attorneys in the

course of litigation.  Moreover, the law is clear that Plaintiff's claims are not barred by res judicata or collateral estoppel, since the claims did not exist at the time the prior debt collection actions were filed, and concern misconduct that had nothing to do with the prior actions. Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

## II.    Standard for Motions to Dismiss

Motions to dismiss pursuant to Rule 12(b)(6) are disfavored.[1] *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002).  Under Rule 8(a)(2), a pleading must contain nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief."  In evaluating a motion to dismiss under Rule 12(b)(6), "[a]ll well-pleaded facts . . . are accepted as true and viewed in the light most favorable to the nonmoving party." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).  "The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).  Documents attached to the complaint are considered as part of the pleadings for the purposes of such motions. *Teigen,* 511 F.3d at 1078.

"To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.*  As such, "'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* at 1191.  The stringency of this standard is frequently exaggerated, with defendants suggesting that *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) constituted a sharp departure from precedent.  To the contrary, the

---

[1] In the Motion to Dismiss, Defendants set forth arguments pursuant to Rule 12(b)(6) and Rule 12(c).  The same standards apply to motions under either Rule. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992).

Tenth Circuit has clarified that the *Twombly*/*Iqbal* formulation is simply a "refined standard," not a "heightened" or "more stringent" standard. *Khalik,* 671 F.3d at 1191. The Court has explained that it is not even necessary that the plaintiff set forth a prima facie case in order to survive a motion to dismiss. *Id*. at 1192. Even if a case is dismissed for inadequate pleading, the effect would be merely to allow amendment to fully plead the claims. *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991) ("dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint.").

### III.   Defendants' Motion to Dismiss Should Be Denied

In the portion of the Motion to Dismiss brought pursuant to Rule 12(b)(6), Defendants make two arguments for dismissal. First, they argue that Plaintiff "has not asserted a viable FDCPA claim." Motion to Dismiss at 3. They are incorrect. The statutory language, case law, and policy of the FDCPA demonstrate that Defendants' conduct is subject to penalty under the Act. Second, Defendants argue that Plaintiff's "conclusory" allegations are insufficient to state a claim. Motion to Dismiss at 3-4. Again, this argument misses the mark. In his Complaint, Plaintiff adequately alleged all of his causes of action. Plaintiff addresses each of these arguments in greater detail in the following sections.

### A.   Defendants Violated the Fair Debt Collection Practices Act

Enacting the FDCPA in 1977, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The FDCPA's purpose was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not

4

competitively disadvantaged, and to promote consistent State action to protect consumers against

debt collection abuses."  15 U.S.C. § 1692(e).  It has long been clear that attorneys engaged in

the collection of debts are subject to liability under the FDCPA.  *Heintz v. Jenkins*, 514 U.S. 291

(1995).

   In furtherance of its purpose, the FDCPA makes it illegal for a debt collector to "use any

false, deceptive, or misleading representation or means in connection with the collection of any

debt."  15 U.S.C. § 1692e.  The FDCPA provides a non-exhaustive list of qualifying conduct,

including:

> (2) The false representation of – (A) the character, amount, or legal status of any
> debt; or (B) any services rendered or compensation which may be lawfully
> received by any debt collector for the collection of a debt."
> (8) Communicating or threatening to communicate to any person credit
> information which is known or which should be known to be false, including the
> failure to communicate that a disputed debt is disputed.
> (10) The use of any false representation or deceptive means to collect or attempt
> to collect any debt or to obtain information concerning a consumer.

*Id*.  Even true statements can violation section 1692e if they have the capacity to mislead.

*Rosenau v. Unifund Corp.,* 539 F.3d 218, 222 (3d Cir. 2008) ("A debt collection letter is

deceptive where it can be reasonably read to have two or more different meanings, one of which

is inaccurate.").

   The FDCPA also prohibits the use of "unfair or unconscionable means to collect or

attempt to collect any debt."  15 U.S.C. § 1692f.  Again, the FDCPA includes a non-exhaustive

list of examples, including "[t]he collection of any amount (including any interest, fee, charge, or

expense incidental to the principal obligation) unless such amount is expressly authorized by the

agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

   As a remedial statute, the FDCPA is liberally construed in favor of the consumer.

*Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).  Any single violation of the FDCPA is

sufficient to give rise to liability.  15 U.S.C. § 1692k.  "The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation."  *Yang v. Midland Credit Mgmt., Inc.*, No. 15-2686-JAR, 2016 WL 393726, at \*2 (D. Kan. Feb. 2, 2016).  Proof that the consumer was deceived is not required.  *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) ("the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary.").  In evaluating whether a practice violates the FDCPA, "[t]he Tenth Circuit has recognized that other circuit courts of appeal have applied an objective standard when analyzing claims under the FDCPA, measured by how the 'least sophisticated consumer' would interpret the [alleged false, deceptive, or misleading statement] received from the debt collector." *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1220 (D. Kan. 2014) (internal quotations omitted) (citing *Ferree v. Marianos,* 129 F.3d 130, 1997 WL 687693, at \*1 (10th Cir. Nov. 3, 1997) (unpublished)).  "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

In their Motion to Dismiss, Defendants claim that Mr. Cordova failed to state a claim for relief under the FDCPA because disputes over the "reasonableness" of a request for attorney's fees are not actionable under the FDCPA.  Motion at 2-3.  If Mr. Cordova were simply claiming that the amount of attorney's fees requested by Defendants was unreasonable but otherwise permissible, then Defendants might be correct, as suggested by the primary case cited by Defendants, *Mayhall v. Berman & Rabin, P.A.*, No. 4:13CV0175 AGF, 2014 WL 340215 (E.D. Mo. Jan. 30, 2014).  In *Mayhall*, the plaintiff alleged violations of sections 1692e and 1692f of the FDCPA based on an attorney debt collector's submission of a request for attorney's fees in association with default judgment.  2014 WL 340215, \*1.  The parties did not dispute that the

attorney debt collector was contractually entitled to "reasonable" attorney's fees.  *Id.*  It was also "undisputed that the attorney's fee request was equivalent to 15% of the outstanding credit balance."  *Id.*  The plaintiff alleged that the debt collector attorney's fee request was not authorized by the underlying contract, and that it was "unreasonable per se under Missouri law." *Id.* at *2.  The attorney debt collector moved for summary judgment on the FDCPA claims.  The District Court granted summary judgment, ruling that the contract did authorize the attorney debt collector's fee award.  *Id.* at *6.   The Court was careful to clarify that the Plaintiff would have stated a claim had the fees not been authorized.  *Id.* at *6-7 (citing *Kojetin v. C U Recovery*, 212 F.3d 1318 (8th Cir. 2000)).  As for the remaining claim that the fees were unreasonable, the Court held that "a fixed percentage fee is not unreasonable as a matter of law."  *Id.* at *6.  The Court explained that "a request for a fixed percentage fee award, **without more**, does not constitute a false representation," but instead represents "a request for the trial court to exercise its discretion to award a specific fee."  *Id.* (emphasis added); *see also Bull v. Asset Acceptance, LLC*, 444 F. Supp. 2d 946 (N.D. Ind. 2006) (dismissing an FDCPA claim alleging that fees were "patently unreasonable," but noting that deceptive statements in fee requests do give rise to liability).

Contrary to Defendants' assertions, *Mayhall* does not stand for the proposition that attorney's fee requests can never be the basis for FDCPA claims.  Indeed, in *Mayhall*, the Court went out of its way to point out that false or misleading representations in requests for attorney's fees **will** give rise to FDCPA claims.  The real message of *Mayhall* is that there is no FDCPA liability where the debt collector **did not do anything wrong**.  Merely requesting fees and triggering the Court's discretion, without any misconduct, is not unlawful.

Mr. Cordova's claims are markedly different from the plaintiff in *Mayhall*. Mr. Cordova alleges that Defendants obtained attorney's fee awards by submitting fraudulent fee affidavits. Complaint ¶¶ 17-33. In the fee affidavits, Defendants falsely claimed that Mr. Jenkins performed 4.25 hours of attorney work at $250 per hour, when in fact he performed significantly less, or none at all. *Id*. This is not simply a request for the Court to use its discretion to award fees; it is an affirmative attempt to defraud the Court and the consumer. Such a misrepresentation violates section 1692e, including subsections (2), (8), and (10), and constitutes an unfair practice contrary to section 1692f, including subsection (1). Defendants' statements have the capacity to mislead the least sophisticated consumer; after all, Defendants were able to mislead sophisticated judges who did not have the benefit of seeing Defendants' pattern of deception across hundreds of cases. FDCPA case law clearly establishes liability for this conduct:

In *Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp. 1495 (D.N.M. 1994), the District of New Mexico granted summary judgment to a plaintiff alleging that a debt collector violated sections 1692e(2) and 1692f(1) of the FDCPA based on its attorney's request for attorney's fees in a collection lawsuit. The attorney claimed that he was entitled to fees pursuant to N.M.S.A. 1978 § 39-2-2.1, which permits fees in "civil actions . . . to recover on an open account." *Martinez*, 867 F. Supp. at 1509-10. The Court ruled that "[b]ecause neither the SED nor Lovelace accounts were open, Defendant falsely represented the legal nature of Plaintiff's debt and subsequently received an award of legal fees to which it was not entitled, in violation of section 1692e(2) and 1692f(1). *Id*. at 1510.

Similarly, in *Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C.*, No. 1:04-CV-733, 2005 WL 2180481 (W.D. Mich. Sept. 9, 2005), the Court granted summary

judgment to the plaintiff pursuant to section 1692e based on an affidavit submitted in support of a motion for default judgment. The affidavit alleged that the defendant was entitled to a "sum certain" including $775.68 in attorney's fees. *Id*. at *1. Ruling that this representation was deceptive, the Court observed that:

> The inclusion of a liquidated sum as attorney fees with the principal debt owed altered the terms of the contract between Capital One and Stolicker and violated the FDCPA. The contract she signed with Capital One required that she pay a 'reasonable attorney fee,' not $776.68 or any other liquidated amount.

*Id*. at *4. The Court distinguished the sorts of claims that were rejected by *Mayhall*, writing that:

> The issue is not whether the requested attorney fee is in fact reasonable. Nor is the issue whether Michigan law permits the award of a contingent attorney fee. The central issue in this case, which Muller repeatedly overlooks, is whether the request of a liquidated amount as an attorney fee is false or misleading when the contract authorizing the fee permits only a "reasonable attorney fee."

*Id*. at *5.

For similar reasons, Courts have found violations of the FDCPA when debt collectors requested contractually or legally unauthorized attorney's fees in in debt collection lawsuits. In *Munoz v. Pipestone Fin., LLC*, 513 F. Supp. 2d 1076 (D. Minn. 2007) the Court granted summary judgment against the defendants, a debt collector and its attorney, pursuant to the plaintiff's claim under section 1692e, based on the defendants' assertion in its complaint that attorney's fees were "due and owing." The Court explained that "Munoz is not challenging the reasonableness of the fees sought by Defendants in the state-court action. Instead, he claims that Defendants violated the FDCPA by asserting that attorney's fees were due and owing when the state-court action began." *Id*. at 1081. Because the contract only authorized "reasonable fees," the Court concluded that it was a misrepresentation to claim that fees were "due and owing" at the outset of the case. *Id*.; *see also*, *Strange v. Wexler*, 796 F. Supp. 1117 (N.D. Ill. 1992) (granting summary judgment on plaintiff's claim that section 1692e(2) was violated when

defendant debt collection attorney requested fees in his complaint which were not permitted by state law); *Moxley v. Pfundstein*, No. 1:10-CV-2912, 2012 WL 4848973 (N.D. Ohio Oct. 11, 2012) (same); *cf. McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) (upholding the trial court's grant of summary judgment to plaintiff alleging violation of sections 1692e(2) and 1692f(1) when defendant debt collection attorney claimed that it was entitled to attorney's fees in its complaint, but could not produce a contract entitling it to such fees).  Case law is similarly replete with examples of debt collectors found liable for violating the FDCPA based on dunning letters misrepresenting their entitlement to attorney's fees.  *See, e.g.*, *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012); *Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir. 2003); *Ardino v. Solomon & Solomon, P.C.*, No. CIV. 13-1821 KM, 2014 WL 268680 (D.N.J. Jan. 23, 2014); *Fosen v. Weinstein & Riley, P.S.*, No. 4:12CV662, 2013 WL 4417526 (E.D. Tex. Aug. 14, 2013).

While a plaintiff may not be able to use an FDCPA lawsuit to challenge a debt collector's lawful request for a Court to determine a "reasonable" amount of fees, there is no doubt that misrepresentations in fee affidavits are actionable.

### B. Plaintiffs' Allegations Are Not "Conclusory"

Defendants argue that Plaintiff "has failed to set forth sufficient factual allegations to support the remaining counts in his complaint."  Motion to Dismiss at 3-4.  Specifically, Defendants claim there is insufficient support for the assertion that Defendants did not perform 4.25 hours of attorney work in the debt collection case.  *Id*.  This is incorrect.  As noted above, *Twombly* and *Iqbal* require the plaintiff to do more than restate the elements of a cause of action.  Plaintiff, in his Complaint, far exceeds this standard.  In addition to attaching six identical fee

affidavits demonstrating Defendants' fraud, Plaintiff's Complaint contains the following

allegations:

10.   On June 16, 2014, Mr. Jenkins, representing debt buyer Autovest, L.L.C., filed suit in New Mexico's Second Judicial District against Joshua Cordova.  *Autovest, L.L.C. v. Cordova et al.*, No. D-202-CV-2014-04077 ("the Lawsuit").

13.   No responsive pleadings were filed in the Lawsuit.

14.   There were no hearings in the Lawsuit.

15.   Mr. Jenkins never made a court appearance in the Lawsuit.

23.   Mr. Jenkins did not perform 4.25 hours of work in the Lawsuit.

24.   In his debt collection cases resolved by default judgment around the time of the Lawsuit, Mr. Jenkins submitted nearly identical fee affidavits, using the lodestar method, claiming that he had performed 4.25 hours of work. Plaintiff attaches as Exhibit 2 eight examples of these nearly identical fee affidavits, submitted to the Second Judicial District Court.

25.   All of the affidavits contained the same itemization of attorney time, for example, claiming 1.0 hours for "Miscellaneous communication with client."

26.   The fee affidavits do not reflect actual attorney time expended on each case.

27.   Mr. Jenkins and JWY spent far less than 4.25 hours of attorney time in the Lawsuit and in each of the other cases.

28.   For example, Mr. Jenkins did not spend 1.0 hours communicating with his client about each case.

29.   For another example, Mr. Jenkins did not spend 1.0 hours to "Draft Motion for Default Judgment and Final Judgment."

30.   The one-page Motion for Default Judgment is nearly identical to motions filed by Mr. Jenkins in other cases.  Plaintiff attaches as Exhibit 3 the motion filed in Plaintiff's case and five other examples of nearly identical motions for default judgment.

31.   Mr. Jenkins's support staff prepared all such form pleadings, and performing this task took considerably less than 1 hour of their time.

32.   As a third example, each fee affidavit claimed .5 hours to "File Complaint / Correspond with Process Server."

33.   Virtually no attorney time was expended filing each complaint or corresponding with a process server.  This work was done by support staff.

This is hardly the conclusory recital of the elements of a cause of action.  Plaintiff adequately

pleaded his claims.

## IV.     Defendants' Motion for Judgment on the Pleadings Should Be Denied

In the portion of their Motion to Dismiss filed pursuant to Rule 12(c), Defendants claim

that Plaintiff's claims are barred by res judicata and collateral estoppel.[2]  Motion to Dismiss at 4-

7.  These arguments are unavailing, and Plaintiff addresses them in turn.

### A.  Plaintiff's Claims Are Not Barred By Res Judicata

*"Res judicata* is a judicial creation ultimately intended to serve the interests of justice."

*Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, 148 N.M. 106, 125, 231 P.3d 87, 106.[3]

"Claim preclusion, or res judicata, precludes a subsequent action involving the same claim or

cause of action."  *Bank of Santa Fe v. Marcy Plaza Associates*, 2002-NMCA-014, 131 N.M. 537,

540, 40 P.3d 442, 445.  Res judicata bars not only claims that were raised in the prior

proceeding, but also claims that could have been raised. *Kirby,* 148 N.M. at 124, 231 P.3d at 105.

The party seeking to bar claims has the burden of establishing res judicata.  *Bank of Santa Fe,*

131 N.M. at 540, 40 P.3d at 445.

Plaintiff's claims are not barred by res judicata because they did not exist when the

underlying debt collection action was filed.  As a general matter, "[r]es judicata precludes a

claim when there has been a full and fair opportunity to litigate issues arising out of that claim."

*Id.*  For this reason, the law is clear that res judicata does not bar claims that arose after the

complaint in the previous lawsuit was filed.  As the New Mexico Court of Appeals has stated,

"[f]or res judicata purposes, claims that arise from circumstances that come into existence after

the first lawsuit is filed *may* be asserted by a supplemental pleading, but they are not required to

---

[2] Defendants also seem to suggest that Rule 1-060 N.M.R.A. bars this litigation, but present no authority to suggest that rule has any preclusive effect.  Plaintiff is not aware of any such authority.

[3] "In determining whether a state court judgment precludes a subsequent action in federal court, we must afford the state judgment full faith and credit, giving it the same preclusive effect as would the courts of the state issuing the judgment."  *Rhodes v. Hannigan*, 12 F.3d 989, 991 (10th Cir. 1993).

be asserted in the first lawsuit." *Brooks Trucking Co. v. Bull Rogers, Inc.*, 2006-NMCA-025, 139 N.M. 99, 104, 128 P.3d 1076, 1081; *see also, Bank of Santa Fe v. Marcy Plaza Associates*, 2002-NMCA-014, 131 N.M. 537, 543, 40 P.3d 442, 448 (holding a claim was not barred by res judicata where the party was not aware of the claim during the previous litigation).  Many other Courts have taken the same position.  *Morgan v. Covington Twp.*, 648 F.3d 172, 177 (3d Cir. 2011), *as amended* (Aug. 11, 2011) (adopting "a bright-line rule that *res judicata* does not apply to events post-dating the filing of the initial complaint"); *Smith v. Potter,* 513 F.3d 781, 783 (7th Cir. 2008) ("Res judicata does not bar a suit based on claims that accrue after a previous suit was filed.... It does not matter whether, as in the case of harassment, the unlawful conduct is a practice, repetitive by nature ... that happens to continue after the first suit is filed, or whether it is an act, causing discrete, calculable harm, that happens to be repeated."); *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 529 (6th Cir.2006) ("Simply put, [Rawe] could not have asserted a claim that [she] did not have at the time" the complaint was filed.); *Mitchell v. City of Moore,* 218 F.3d 1190, 1202–03 (10th Cir.2000) ("[W]e agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed."); *Baker Group, L.C. v. Burlington N. & Santa Fe Ry.,* 228 F.3d 883, 886 (8th Cir.2000) (holding "claim preclusion does not apply to claims that did not arise until *after* the first suit was filed" (emphasis in original)); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 126 F.3d 365, 369–70 (2d Cir.1997) ("For the purposes of *res judicata,* '[t]he scope of the litigation is framed by the complaint at the time it is filed.'"); *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir.1992) ( "[W]e do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation."); *Los Angeles*

*Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir.1984) (noting that *res judicata* would encompass acts "occurring prior to the commencement" of the prior litigation).

In this case, Plaintiff's claims are based on misrepresentations in a fee affidavit filed in the case *Autovest, L.L.C. v. Christobal Cordova, et al*.  The fee affidavit was filed in conjunction with Autovest's motion for default judgment on October 29, 2014.  Exhibit 1 (fee affidavit). This was more than four months after Autovest's complaint was filed on June 16, 2014. *Compare* Exhibit 1 (fee affidavit) *with* Exhibit 2 (complaint).  At the time that Autovest filed the complaint, it was impossible for Plaintiff to assert the FDCPA claim and other causes of action set forth in this case.  Defendants' misconduct had not yet occurred.  Importantly, Plaintiff does not now challenge Defendants' entitlement to fees in its earlier cases, or the reasonableness of its fee request.  Both of these were matters that might have been anticipated at the time of Autovest's complaint, and might give rise to res judicata.  *See, e.g., Francoeur v. U.S. Bank Nat. Ass'n*, No. 15-2016, 2016 WL 1084767 (10th Cir. Mar. 21, 2016) (unpublished decision barring claims concerning the reasonableness of fees where no misrepresentation was alleged); *In re Richards*, 1999-NMSC-030, 127 N.M. 716, 986 P.2d 1117; *cf.* Section III(A), *supra* (discussing how challenges to the reasonableness of a fee award may not state a claim under the FDCPA).

Here, Plaintiff seeks relief for affirmative misconduct committed by Defendant months after the Autovest complaint was filed.  In *Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C.*, 387 F.Supp.2d 752 (W.D. Mich. 2005) a Federal District Court was faced with a res judicata defense in a case directly on point with this one.  In *Stolicker*, the plaintiff asserted violation of section 1692e based on an affidavit submitted in support of a motion for default judgment.  The affidavit falsely alleged that the defendant was entitled to a "sum certain"

14

including $775.68 in attorney's fees.  *Id*. at 754.  In response to the defendant's res judicata defense, the Court ruled that:

> As stated previously, the allegations in the complaint center upon the allegedly false affidavit submitted with the application of default. These allegations do not implicate and are not affected by the issues addressed in the state court proceeding. In this case Stolicker alleges a separate and discrete claim of a violation of federal law that is not a collateral attack on the state judgment. Her liability for the debt does not affect whether the Muller law firm's collection practices violated the FDCPA and MCPA.

*Id*. at 755.  The same reasoning applies here.

Under the overwhelming weight of the authorities cited above, res judicata does not bar such claims, arising after the filing of the complaint in the prior action and involving none of the same operative facts.

The circumstances surrounding *Autovest v. Cordova* provide further support for the proposition that Plaintiff lacked a full and fair opportunity to litigate the issue of attorney's fees. There is no certificate of service indicating that Defendants attempted service of the motion for default judgment or fee affidavit.  In any case, there was no time to complete service; the District Court entered default judgment, including an award of attorney's fees, on October 30, 2014, the day after the fee affidavit was filed.  Exhibit 3 (default judgment).  Finally, Defendants' fraudulent misrepresentations were designed to avoid detection in the underlying case.  It was only in reviewing multiple case files that it became evident that Defendants were submitting false fee affidavits.  The Restatement (Second) Judgments § 26, comment j, states that a defendant should not be permitted to claim the benefit of res judicata when the plaintiff failed to bring a claim in a previous action as a result of the defendant's "fraud, concealment, or misrepresentation."  As noted above, the purpose of res judicata is to do justice.

Application of the elements of res judicata bolsters the conclusion that it does not bar Plaintiff's claims.  In New Mexico, "[r]es judicata applies when four elements are met: (1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) same cause of action, and (4) same subject matter."  *Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, 98 N.M. 690, 694, 652 P.2d 240, 244 *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, 105 N.M. 57, 728 P.2d 467. Defendants fail to meet all four requirements.

The parties to this action are not the same as the parties to *Autovest v. Cordova*, and for that reason they fail to meet the first two elements of res judicata.  In *Autovest v. Cordova*, Defendants Jenkins and JWY were counsel for Autovest, and were not themselves parties. Defendants make the conclusory assertion that as Autovest's attorneys, Defendants were *ipso facto* in privity with their clients.  This is not the law in New Mexico.  "A person in privity with another is a person so identified in interest with another that he represents the same legal right." *Johnson v. Aztec Well Servicing Co*., 1994-NMCA-065, 117 N.M. 697, 700, 875 P.2d 1128, 1131 (internal quotation marks and citation omitted).  In *DeLisle v. Avallone*, 1994-NMCA-012, 117 N.M. 602, 605, 874 P.2d 1266, 1269, the New Mexico Court of Appeals held that an attorney might be in privity with his client for the purposes of collateral estoppel if the attorney had "sufficient control over the litigation," or "had a sufficient interest and participated in the prior action" (internal quotations marks and citation omitted).  Observing that "the factual matters to be decided in the litigation related to the conduct of Attorney himself," the Court of Appeals held that a *prima facie* showing of privity had been made.  No such showing has been made in this case.  Defendants offer no evidence to suggest that they had anything other than an attorney-client relationship with Autovest.

Defendants also fail to establish the third and fourth elements of res judicata, since this case involves neither the same cause of action nor the same subject matter as the prior action. New Mexico has adopted the Restatement (Second) Judgments § 24's "transactional" approach to determining whether a party asserts the same cause of action as a previous case. *Three Rivers Land Co.,* 98 N.M. at 695, 652 P.2d at 245.  Under this approach, the Court considers three factors to determine whether the causes of action are the same: "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Roybal v. Lujan de la Fuente*, 2009-NMCA-114, 147 N.M. 193, 198, 218 P.3d 879, 884.

Here, the facts of the two actions are not related.  As noted above, the facts giving rise to Plaintiff's claims did not exist when *Autovest v. Cordova* was filed.  "Where the ultimate facts necessary for the resolution of two suits are different, and the issues necessarily dispositive in the prior cause are different from those in the subsequent cause, the doctrine of *res judicata* is inapplicable." *Silva v. State*, 1987-NMSC-107, 106 N.M. 472, 474, 745 P.2d 380, 382.  In *Autovest v. Cordova*, Autovest sought to show that Mr. Cordova entered into a contract, that the contract was assigned to Autovest, and that Mr. Cordova breached the contract, entitling Autovest to damages.  None of these facts are relevant to Mr. Cordova's claims in this case. Even Autovest's entitlement to attorney fees is unchallenged in this case.  Mr. Cordova's claims are based entirely on Defendants' independent misrepresentations in the course of litigating *Autovest v. Cordova*.  *Cf. Runge v. Fox*, 1990-NMCA-086, 110 N.M. 447, 450, 796 P.2d 1143, 1146 (holding that res judicata and collateral estoppel did not bar claims for damages relating to

17

the "manner of executing the writ of restitution," when the parties had previously litigated the underlying claim for past due rent and restitution of the property).

Similarly, Plaintiff's claims in this case do not form a convenient unit for trial purposes with the claims in the underlying debt collection case.  Even if Plaintiff had been able to detect the fraud, asserting his claims would have been difficult or impossible.  On the brink of default judgment, Plaintiff would have needed to set aside default, despite the fact that he claims no meritorious defense to the underlying debt collection cause of action.  Rule 1-055(C) N.M.R.A.; *Franco v. Fed. Bldg. Serv., Inc.*, 1982-NMSC-084, 98 N.M. 333, 334, 648 P.2d 791, 792.  Then he would have needed to move for leave to assert counterclaims against the attorneys for Autovest, potentially undermining their ability to provide representation in the collection case.  Rule 16-307 N.M.R.A. (prohibiting lawyers from acting as witnesses).  If leave to amend were granted, Plaintiff would have been required to restart the case, undertaking extensive discovery into areas having nothing to do with the underlying debt collection action.  This was not a convenient unit for trial.  *Cf. Computer One, Inc. v. Grisham & Lawless, P.A.*, 2008-NMSC-038, 144 N.M. 424, 433 n.3, 188 P.3d 1175, 1184 n.3 (holding that a malpractice claim was not barred by a previous objection to a charging lien, and observing that a new claim for professional negligence would not fit conveniently into a separate case as a response to a charging lien filed late in litigation).

Finally, Defendants make no suggestion that the parties' "business understanding or usage" implies that Plaintiff's claims should be barred.

Applying these elements, the Court should find that Plaintiff's claims are not barred by res judicata.

### B. Plaintiff's Claims Are Not Barred By Collateral Estoppel

Defendants also claim that the doctrine of collateral estoppel bars Mr. Cordova and the class from seeking relief for Defendants' deceptive fee affidavits.  Motion to Dismiss at 6-7. Again, this argument falls short.

New Mexico does not give collateral estoppel effect to default judgments. *Blea v. Sandoval*, 1988-NMCA-036, 107 N.M. 554, 557, 761 P.2d 432, 435 ("There is ample authority for the proposition that a default judgment has no collateral estoppel effect."); *In re Spencer*, 541 B.R. 750, 756 (Bankr. D.N.M. 2015) ("Default judgments cannot form the basis for issue preclusion"); *In re Martinez*, 476 B.R. 627, 633 (Bankr. D.N.M. 2012) ("default judgments do not have preclusive effect under New Mexico law.").  In *Blea*, the New Mexico Court of Appeals explained the reasoning behind this rule:

> [I]n a default judgment, the issues are not actually litigated . . . the policy of preventing endless litigation does not apply as strongly in the collateral estoppel context as it does when parties are repeatedly attempting to relitigate the same cause of action.  Hence, while it may be proper to accord res judicata effect to a default judgment, it is not appropriate to give such a judgment collateral estoppel effect.  When an issue is disposed of by default, there has been little expenditure of judicial resources or the parties' resources; thus, it is not unfair to allow the defaulting party an opportunity to actually litigate the issue in a subsequent *different* cause of action.

1988-NMCA-036, 107 N.M. 554, 558, 761 P.2d 432, 436.

Without citation to any authority, Defendants suggest that perhaps the attorney's fees portion of the default judgment should be given collateral estoppel effect, although the rest of the judgment is not.  Motion at 6-7.  Defendants claim that "the award of attorney's fees involves analysis and due consideration by the state district court of the fee application, and therefore goes beyond the mere entry of default that occurred in the *Blea* case."  *Id*. at 7.  This is a false distinction.  Most importantly, it is entirely unsupported by New Mexico law.  In addition, the

entry of default judgment on the merits, like the award of attorney's fees, involves the discretion

of the trial court.  Rule 1-055 N.M.R.A. ("If, in order to enable the court to enter judgment or to

carry it into effect, it is necessary to take an account or to determine the amount of damages or to

establish the truth of any averment by evidence or to make an investigation of any other matter,

the court may conduct such hearings or order such references as it deems necessary and proper");

*Farms v. Carlsbad Riverside Terrace Apartments, Inc.*, 1973-NMSC-020, 84 N.M. 624, 625, 506

P.2d 781, 782 ("It lies within the sound discretion of the trial court to refuse the entry of a default

judgment.").  Although the Court exercises its discretion in awarding default judgment on the

merits and as to attorney's fees, in neither case is the issue "actually litigated," as is required for

collateral estoppel to apply.  *City of Sunland Park, Santa Teresa Servs. Co. v. Macias*, 2003-

NMCA-098, 134 N.M. 216, 220, 75 P.3d 816, 820.  If anything, the question of the legitimacy of

Defendants' attorney fee affidavit was even less "litigated" than the merits of the debt collection

lawsuit, since Defendants' bogus claim for fees was not "put in issue by the pleadings."  *Id*., 134

N.M. at 221, 75 P.3d at 821.  It was only at the end of *Autovest v. Cordova* that Defendants

submitted their deceptive fee affidavit.

　　　　Even if collateral estoppel were available for default judgments, Defendants fail to satisfy

its elements.  As noted above, Defendants are not in privity with Autovest.  The issue of

Defendant's fraud was not necessarily determined by the state court.  And importantly, even if

the elements of collateral estoppel were present, the Court must consider whether countervailing

equities militate against application of the doctrine. *See Hyden v. Law Firm of McCormick,*

*Forbes, Caraway & Tabor,* 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct.App.1993). Collateral

estoppel should be applied only where the Court determines that its application would not be

fundamentally unfair. *See Reeves v. Wimberly,* 107 N.M. 231, 234, 755 P.2d 75, 78

(Ct.App.1988).  Here, applying collateral estoppel would render Defendants utterly

unaccountable for their misdeeds.

## V.   Conclusion

Before this lawsuit was filed, Defendants had never been called upon to answer for their

fraud.  Should this lawsuit be dismissed, they never will.  Plaintiff respectfully requests that the

Court deny Defendants' Motion to Dismiss and allow this case to proceed.


Respectfully submitted,

/s/Nicholas Mattison
Nicholas Mattison
Richard N. Feferman
Feferman & Warren, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773
(505) 243-6663 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2016 I filed the foregoing pleading electronically through
the Courts's CM/ECF File System, which caused all parties or counsel to be served by electronic
means, as more fully reflected on the Notice of Electronic Filing:

Charles J.  Vigil          cvigil@rodey.com
Attorney for Defendants


*/s/ Nicholas Mattison*