IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA CORDOVA, on his own behalf,
and on behalf of all others similarly situated,

    Plaintiff,

vs.                                                                               Civ. No. 16-460 KG/KBM

JODY JENKINS and
JENKINS, WAGNON & YOUNG, P.C.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants Jody Jenkins and Jenkins, Wagnon & Young, P.C.'s ("Defendants'") Rule 12(b)(6) Motion to Dismiss and Motion for Judgment on the Pleadings ("Motion"), filed on May 27, 2016. (Doc. 5). Plaintiff filed a response ("Response") on June 24, 2016, and Defendants filed a reply ("Reply") on July 22, 2016. (Docs. 14 and 15). Having reviewed the Motion and the accompanying briefs, the Court DENIES the Motion.[1]

### I.     Background

Plaintiff Joshua Cordova originally filed a Class Action Complaint for Damages ("Complaint") in the Second Judicial District Court in the County of Bernalillo, New Mexico ("State District Court"). (Doc. 1-1) at 8–15. In the Complaint, Plaintiff alleges that attorney Jody Jenkins ("Defendant Jenkins") and his law firm, Jenkins, Wagnon & Young, P.C. ("Defendant JWY") submitted fraudulent attorney fee affidavits in their New Mexico debt

---

[1] Plaintiff has requested that the Court set a hearing on the Motion. (Doc. 17). However, having reviewed the arguments by counsel, the Court determines that a hearing is unnecessary. Consequently, the Court will deny Plaintiff's request.

collection cases, resulting in hundreds of inflated judgments against New Mexico residents. (*Id*. at 8). Plaintiff claims that Defendants' conduct violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1, *et seq.* ("UPA"), and constituted malicious abuse of process, fraud, and unjust enrichment. *Id*.

As the basis for Plaintiff's claims, Plaintiff specifically alleges that, on June 16, 2014, Defendant Jenkins filed suit in State District Court on behalf of debt buyer Autovest, L.L.C. ("Autovest"), against Plaintiff (the "Lawsuit"). (Doc. 1-1) at 9. The complaint in that case alleged that Autovest was the owner and holder of an auto loan contract, acquired from Wells Fargo, that Plaintiff had signed in 2006 to finance the purchase of a motor vehicle. *Id*. The complaint further alleged that Plaintiff defaulted on the auto loan and, as a result, was indebted to Autovest. *Id*. Throughout the Lawsuit, no responsive pleadings were filed, no hearings were held, and Defendant Jenkins did not make any court appearances. *Id*. at 9–10. Subsequently, Defendant Jenkins filed a Motion for Default Judgment on behalf of Autovest, to which he attached a signed, notarized, "Itemized Affidavit in Support of Attorney's Fees" ("Fee Affidavit"). *Id*. at 10.

The Fee Affidavit sought attorney's fees for the hours Defendants Jenkins and JWY spent on the Lawsuit under the lodestar method. *Id*. In support of their request, Defendant Jenkins stated, under oath, that Defendant JWY had spent a total of 4.25 attorney hours, at a reasonable rate of $250 per hour, on the Lawsuit, itemized as follows: (1) receive and review file and general demand letter – .5; (2) draft complaint, summons, affidavit in support of complaint, and non-military affidavit – 1.0; (3) file complaint, correspond with process server – .5; (4) draft letter to clerk to file return of service with certificate of mailing – .25; (5) draft Motion for

Default Judgment and Final Judgment – 1.0; and (6) miscellaneous communication with client – 1.0. *Id*. On October 30, 2014, the State District Court granted Autovest default judgment and awarded Defendants attorney's fees. *Id*.

Plaintiff alleges that Defendant Jenkins did not perform 4.25 of work in the Lawsuit. In support, Plaintiff attaches several other nearly identical Fee Affidavits, which Defendant Jenkins submitted in other debt collection cases resolved by default judgment around the time of the Lawsuit. *Id*. at 10, 16–23; (Doc. 1-2) at 1–11. In those Fee Affidavits, Defendant Jenkins claims that he performed 4.25 hours of work, with the same itemization of attorney time. *Id*. In addition, Plaintiff attaches a one-page Motion for Default Judgment which was filed in the Lawsuit, along with five other examples of nearly identical motions for default judgment filed in similar cases. (Doc. 1-2) at 11–16. As a result, Plaintiff claims that Defendant Jenkins could not have performed all these tasks and that they more likely were completed by support staff in less than 4.25 hours. Thus, Defendants' Fee Affidavits contained false statements. (Doc. 1-1) at 11.

Defendants removed the case to this Court on May 20, 2016. (Doc. 1). Subsequently, they filed their Motion, seeking dismissal of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6), and judgment on the pleadings pursuant to the doctrines of *res judicata* and collateral estoppel. (Doc. 5). In response, Plaintiff argues that he has stated a viable claim under the FDCPA and that he has otherwise alleged sufficient factual matter to survive a Rule 12(b)(6) motion to dismiss. In addition, Plaintiff maintains that his claims are not barred by *res judicata* or collateral estoppel.

## II.   Standard of Review

In reviewing a Rule 12(b)(6) motion asserting a failure to state a claim upon which relief can be granted, the Court must accept all well-pleaded allegations as true and must view them in

3

a light most favorable to the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118 (1990). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a 12(b)(6) motion to dismiss, a complaint need not include detailed factual allegations, but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Where a complaint alleges fraud, however, "a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (citing *Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997)). In addition, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation omitted).

**III.     Discussion**

Defendants move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) and 9(b), and for judgment on the pleadings pursuant to the doctrines of *res judicata* and collateral estoppel. The Court will address each argument in turn.

A. *12(b)(6) and 9(b)*

Defendants argue that Plaintiff has failed to state a viable FDCPA claim based on the allegations in the Complaint. In addition, Defendants contend that Plaintiff has otherwise failed to set forth sufficient factual allegations to support her claims, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). Plaintiff responds that he has stated a viable claim under the FDCPA, and that he has otherwise alleged sufficient factual matter to survive a Rule 12(b)(6) motion to dismiss.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). A prima facie case for violation of the FDCPA requires proof of the following four elements:

> (1) the plaintiff is any natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692c(d) for purposes of a cause of action pursuant to 15 U.S.C.A. 1692c or 15 U.S.C.A. 1692e(11);
>
> (2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes; 15 U.S.C.A. § 1692a(5);
>
> (3) the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and
>
> (4) the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A. § 1692a-1692o; 15 U.S.C.A. §1692a; 15 U.S.C.A. § 1692k.

*Duncan v. Citibank (S.D.), N.A.*, No. CIV 06-246 JB/KBM, 2006 WL 4063023, at *5 (D.N.M. June 30, 2006) (quoting 29 CAUSES OF ACTION 2d 1 § 49 (2005)). Here, Plaintiff alleges that Defendants used "false, deceptive, or misleading representation[s] or means in connection with the collection of [Plaintiff's] debt," by falsely representing the services rendered or compensation which may be lawfully received for the collection of the debt, communicating

5

false information, and using a false representation or deceptive means to collect, or attempt to collect, any debt. 15 U.S.C. § 1692e(2), (8), (10). Plaintiff also alleges that Defendants used "unfair or unconscionable means to collect or attempt to collect any debt," by collecting an amount that was not "expressly authorized by the agreement creating the debt or permitted by law." *Id*. at 1692f(1).

Defendants first argue that Plaintiff has failed to sufficiently allege that Defendants violated a provision of the FDCPA.[2] Specifically, Defendants maintain that "[a] request to the court for an award of an allegedly unreasonable attorney's fee does not, without more, constitute a violation of the FDCPA." *Mayhall v. Berman & Rabin, P.A.*, No. 4:13CV0175 AGF, 2014 WL 340215, at *5 (E.D. Mo. Jan. 30, 2014). Defendants argue that the FDCPA is not the appropriate vehicle to question the reasonableness of attorney's fees, and that they should be challenged in the underlying contract or collection action. *Id*. at *5 (citing *Bull v. Asset Acceptance, LLC*, 444 F. Supp. 2d 946, 950 (D.N.D. 2006)).

However, here, Plaintiff is not questioning whether Defendants' fee requests, which are otherwise authorized by law, are reasonable. Plaintiff does not appear to dispute that Defendants were entitled to an award of reasonable attorney's fees, generally. *See* (Doc. 1-1) at 9–11. Rather, Plaintiff alleges that Defendants obtained attorney's fee awards by submitting fraudulent Fee Affidavits in a number of cases, which Plaintiff claims is an affirmative attempt to defraud the court system and Plaintiff as a consumer. *See* (Doc. 1-1) at 10–11 ¶¶ 17–33. At this stage in the proceedings, and taking Plaintiff's allegations as true, this conduct would seem to fall squarely within the scope of FDCPA liability, as described above.

---

[2] Defendants do not dispute that the first three elements of Plaintiff's *prima facie* case have been met.

Indeed, in *Mayhall*, the plaintiff claimed that an attorney had violated Sections 1692e and 1692f by requesting attorney's fees associated with a default judgment, which were not authorized by the underlying contract. *Mayhall*, 2014 WL 340215, at *1. As a result, the plaintiff argued that the fee request was "unreasonable per se." *Id*. at *2. The *Mayhall* court rejected that argument, finding that the underlying contract *did* authorize the fee request. *Id*. at 5–6. It was careful to note, however, that had the fees not been authorized by the contract, or had the defendant inaccurately characterized the content of the contract, the defendant would have violated the FDCPA. *Id*. at 6–7.

Here, Plaintiff does not allege that Defendants' fee awards, including the number of hours expended and the hourly rate, are "unreasonable," but instead alleges that they are based on false statements. The Court finds these allegations to be more closely related to cases in which an attorney made a false or deceptive representation and was awarded a fee amount to which he was not lawfully entitled. Courts have held that attorneys are liable for such conduct under the FDCPA. *See, e.g.*, *Martinez v. Albuquerque Collection Servs. Inc.*, 867 F. Supp. 1495, 1509–10 (D.N.M. 1994) (holding that defendant violated FDCPA by falsely representing the legal nature of plaintiff's debt and subsequently receiving award of attorney fees to which it was not entitled); *Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C.*, No. 1:04-CV-733, 2005 WL 2180481, at *4–5 (W.D. Mich. Sept. 9, 2005) (finding liability under FDCPA where attorney made false representation in order to obtain fee award which was not otherwise authorized by underlying contract). Therefore, the Court finds that, based on the allegations in the Complaint, Plaintiff has stated a claim under the FDCPA.

Second, Defendants argue that Plaintiff has otherwise failed to set forth sufficient factual allegations to support his remaining claims. Defendants maintain that Plaintiff's Complaint

7

contains conclusory allegations, which are insufficient to state a claim under Rule 12(b)(6). Further, Defendants argue that, because Plaintiff alleges fraud, his claims are subject to the heightened pleading standard under Rule 9(b). Defendants contend that Plaintiff's claims fail under this standard as well.

The allegations in the Complaint are summarized as follows: On June 16, 2014, Defendant Jenkins filed suit on behalf of debt buyer Autovest against Joshua Cordova in the State District Court. No responsive pleadings were filed, there were no hearings, and Defendant Jenkins never made a court appearance in the Lawsuit. Ultimately, the State District Court granted Defendant Jenkins' motion for default judgment and awarded Defendant Jenkins attorney fees incurred in bringing and resolving the Lawsuit.

The award of attorney's fees was based on Defendants' Fee Affidavit, which sought attorney's fees for the hours Defendants Jenkins and JWY spent on the Lawsuit under the lodestar method. *Id*. In support of their request, Defendant Jenkins stated, under oath, that Defendant JWY had spent a total of 4.25 attorney hours at a reasonable rate of $250 per hour on the Lawsuit.

The Complaint further alleges that Defendant Jenkins did not perform 4.25 of work in the Lawsuit. In support, Plaintiff attaches several other nearly identical Fee Affidavits, which Defendant Jenkins submitted in other debt collection cases resolved by default judgment around the time of the Lawsuit. *Id*. at 10, 16–23; (Doc. 1-2) at 1–11. In those Fee Affidavits, Defendant Jenkins claims that he performed 4.25 hours of work, with the same itemization of attorney time. *Id*. In addition, Plaintiff attaches a one-page Motion for Default Judgment which was filed in the Lawsuit, along with five other examples of nearly identical motions for default judgment filed in similar cases. (Doc. 1-2) at 11–16. As a result, Plaintiff claims that Defendant Jenkins could not

8

have performed all these tasks and that they more likely were completed by support staff in less than 4.25 hours. According to Plaintiff, it follows that the Fee Affidavit contained false statements. (Doc. 1-1) at 11. The Court does not find these allegations to be conclusory recitations of the elements of a cause of action. Further, the Court finds the allegation that Defendants requested fees for the exact number of hours, despite using templates, or seemingly form motions, in several related cases, plausibly suggests that Defendants' assertions in the Fee Affidavits were false, misleading, or deceptive. Thus, Plaintiff has sufficiently pleaded his claims under Rule 12(b)(6).

Even under Rule 9(b)'s heightened pleading standard, Plaintiff's claims survive. Indeed, Rule 9(b) requires that the pleaded factual allegations "set forth the 'who, what, when, where and how' of the alleged fraud." *Sikkenga*, 472 F.3d at 726–27 (citing *Thompson,* 125 F.3d at 903). This Court finds that the Complaint, as summarized above, does just that.

Finally, Defendants argue that Plaintiff's factual allegations are contradicted by Defendant Jenkins' Fee Affidavits themselves, which are attached to the Complaint. As a result, Defendants maintain that they are not entitled to be presumed true and cannot form the basis of Plaintiff's claims. This argument is not persuasive.

Generally, a court must accept the well-pleaded factual allegations of the complaint as true for purposes of resolving a motion to dismiss under Rule 12(b)(6). *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (citing *Casanova v. Ulibarri,* 595 F.3d 1120, 1124 (10th Cir. 2010)). However, courts may review "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id*. (internal citations omitted). Here, Plaintiff has referred to the following documents in the Complaint and has attached them to either the Complaint or his Response: (1)

Defendants' itemized Fee Affidavits in support of attorney's fees submitted in the underlying case, (Doc. 14-1), and eight examples of identical affidavits submitted in other cases, (Doc. 1-1) at 16–23; (Doc. 1-2) at 1–11; (2) Defendants motion for default judgment submitted in the underlying case, and five examples of identical motions submitted in other cases, (Doc. 1-2) at 11–16; (3) the civil complaint in the underlying case, (Doc. 14-2); and (4) the default judgment in the underlying case. (Doc. 14-3). Because these items are central to Plaintiff's claim, and the parties do not dispute their authenticity, the Court will review these documents in conjunction with the Complaint.

Defendants argue that Defendant Jenkins' statements in the Fee Affidavit could not have been false, misleading, or deceptive, because the Fee Affidavit only requests attorney's fees "based on the time that would be charged in obtaining the judgment, and anticipated time in executing thereon . . . ." (Doc. 14-1) at 1. Defendants argue that the Fee Affidavits conclusively demonstrate the Defendants made no false representations. They assert the Fee Affidavits do not state that Defendants actually spent 4.25 hours of time on the collection, but only that they "would charge" for 4.25 hours.

The Court does not follow Defendants' reading of this statement. While Defendant Jenkins refers to "fees sought . . . based on the time that would be charged in obtaining the judgment," at the time he filed the Fee Affidavit on October 29, 2014, he had already indisputably completed most, if not nearly all, of the tasks listed in the Fee Affidavit. *See* (Docs. 14-1 & 14-2); (Doc. 1-2) at 11. Indeed, Defendants must have already: (1) received and reviewed the file and generated a demand letter; (2) drafted the Complaint and related summonses and affidavits; (3) filed the Complaint on June 16, 2014, and corresponded with the process server; (4) drafted a letter to the clerk to file a return of service with a certificate of

mailing; and (5) presumably, since it was filed on the same day as the Fee Affidavit, drafted the motion for default judgment and draft final judgment. In fact, an alternative reading would suggest that the fees describe time that "would be charged" to the client, had Plaintiff not defaulted in the underlying case, and not necessarily that Defendants had not yet expended that time. Thus, the Court does not find that the Fee Affidavits conclusively contradict the allegations contained in the Complaint. Moreover, even if the fee amount was based on anticipated work by Defendants, the State District Court's fee award was, nevertheless, based on that representation. Any mischaracterization of the content of the Fee Affidavits may be on Defendants' part.

In sum, the Court finds that Plaintiff has sufficiently pleaded his claims under both Rules 12(b)(6) and 9(b). As a result, Defendants' request to dismiss the Complaint on these grounds is DENIED.

### B. Res Judicata and Collateral Estoppel

Defendants further argue that Plaintiff's claims are otherwise barred by the doctrines of *res judicata* and collateral estoppel. Defendants contend that Plaintiff seeks to re-litigate the same cause of action or, alternatively, the same ultimate issue, i.e., the propriety of the State District Court's award of attorney's fees. In response, Plaintiff maintains that his cause of action in this case arose after the filing of the complaint in the underlying debt collection case and that this matter involves none of the same operative facts. As a result, Plaintiff argues that his claims are not barred by *res judicata* or collateral estoppel.

#### 1. Res Judicata

The United States Congress, through the Full Faith and Credit statute, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to a state court judgment that the

11

judgment would be given in the courts of the state in which it was rendered. *Kremer v. Chemical Construction Corp*., 456 U.S. 461, 466 (1982)*; Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 682 (10th Cir. 1991). A district court applying the doctrine of *res judicata* to a state court decision must look to the laws of that state to determine the required elements for either doctrine to preclude a claim or issue brought in federal court. *See Reed v. McKune*, 298 F.3d 946, 949 (10th Cir. 2002).

Under New Mexico law, *res judicata* requires identity of the first and second lawsuits as to "'(1) parties or privies, (2) capacity or character of persons for or against whom the claim is made, (3) cause of action, and (4) subject matter.'" *Kepler v. Slade*, 896 P.2d 482, 484 (1995) (*quoting Silva v. Stat*e, 745 P.2d 380, 382 (1987)). In order to determine whether a claim in a second suit is precluded under *res judicata* by a prior suit, New Mexico State courts will look to: "(i) the relatedness of the facts in time, space, origin, or motivation; (ii) whether, taken together, the facts form a convenient unit for trial purposes; and (iii) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F.Supp.2d 1278, 1285–86 (D.N.M. 2011). Claim preclusion bars both claims that were, and could have been, brought in an earlier proceeding. *Three Rivers Land Co., Inc. v. Maddoux*, 652 P.2d 240, 245 (1982), *overruled on other grounds by*, *Universal Life Church v. Coxon*, 728 P.2d 467 (1986).

Here, regardless of whether Defendants meet the first two elements, Defendants fail to establish the third and fourth elements of *res judicata*, i.e., that this case involves the same cause of action and the same subject matter as the underlying collection action. As Plaintiff points out, Plaintiff's claims in this case did not exist at the time the underlying debt collection was filed. At the time Autovest filed its complaint, Defendants' misconduct had not yet occurred. *Brooks*

12

*Trucking Co. v. Bull Rogers, Inc.*, 2006-NMCA-025, 139 N.M. 99, 104 ("For res judicata purposes, claims that arise from circumstances that come into existence after the first lawsuit is filed *may* be asserted by a supplemental pleading, but they are not required to be asserted in the first lawsuit."). Indeed, the operative facts of the two actions are not related. In the underlying collection action against Plaintiff, Autovest claimed that Plaintiff had entered into a contract, the contract was assigned to Autovest, and that Plaintiff breached that contract, entitling Autovest to damages. Here, Plaintiff seeks damages based on Defendants' alleged independent misrepresentations in the Fee Affidavit in the course of that litigation.

Defendant continues to argue that Plaintiff seeks to re-litigate the reasonableness and propriety of the State District Court's award of attorney's fees. Again, here Plaintiff's argument does not rest on the allegation that Defendants' requests for attorney's fees were unreasonable, especially when viewed individually and in isolation. Instead, Plaintiff's claims are based on the allegation that the statements supporting those requests, in this case and in several others, contained false, misleading, or deceptive representations. The potentially fraudulent representation is an entirely different issue than those addressed in the underlying matter, i.e., whether the attorney's fees requested in an individual case are reasonable, when viewed individually. In addition, as the Court explains above, these allegations are not contradicted by the affidavits themselves. *See* discussion *supra*, pp. 10–11.

Thus, the Court finds that Plaintiff's claims are not barred under the doctrine of *res judicata*. As a result, Defendants' request for judgment on the pleadings on this ground is DENIED.

### 2. *Collateral Estoppel*

"'[C]ollateral estoppel, also called issue preclusion, prevents a party from re-litigating

13

ultimate facts or issues actually and necessarily decided in a prior suit.'" *Leon v. FedEx Ground Package Sys., Inc.*, No. CIV 13-1005 JB/SCY, 2016 WL 814836, at *8–9 (D.N.M. Feb. 21, 2016) (citing *Ullrich v. Blanchard,* 2007–NMCA–145, ¶ 19, 171 P.3d 774, 778). Under New Mexico law, in order for collateral estoppel to apply, the party invoking the doctrine must show that "four elements are met: '(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined.'" *Id*. (citing *Ullrich*, 171 P.3d at 778); *Nwosun v. Gen. Mills Rests., Inc.,* 124 F.3d 1255, 1256 (10th Cir. 1997). "Whether the doctrine of collateral estoppel should be applied is within the trial court's discretion . . . ." *Id*. In fact, "[e]ven when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine." *Id*. (internal citations omitted).

New Mexico courts have declined to give collateral estoppel effect to default judgments. *See, e.g., Blea v. Sandoval*, 1988-NMCA-036, 107 N.M. 554, 557–58 ("collateral estoppel bars consideration only of issues actually litigated and determined by a valid and final judgment") (internal citations omitted). In a default judgment, however, the issues are not actually litigated. *Id*. Despite Defendants' arguments to the contrary, the Court does not see how this reasoning would not equally apply to court-awarded attorney's fees in cases resolved by default judgment. Indeed, the request for attorney fees would be no more "litigated" than the default judgment itself, as both the entry of default judgment and an award of attorney's fees, involve the discretion of the court. *Farms v. Carlsbad Riverside Terrace Apartments, Inc.*, 1973-NMSC-020, 84 N.M. 624, 625 ("It lies within the sound discretion of the trial court to refuse the entry of

14

a default judgment."). In neither case is the issue "actually litigated" for purposes of collateral estoppel.

Even if this Court were to apply collateral estoppel to the issues presented here, Defendants have not shown that all four elements have been met. For the same reasons stated above, the ultimate issue of whether Defendants made false representations on Fee Affidavits presented to courts across New Mexico was neither actually litigated before, nor necessarily determined by, the State District Court.

As a result, the Court finds that Plaintiff's claims are not barred under the doctrine of collateral estoppel. Accordingly, Defendants' request for judgment on the pleadings on this ground is DENIED.

## IV. Conclusion

For the foregoing reasons, IT IS THEREFORE ORDERED that Defendants' Rule 12(b)(6) Motion to Dismiss and Motion for Judgment on the Pleadings, (Doc. 5), be DENIED.

_____
UNITED STATES DISTRICT JUDGE