IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA CORDOVA, on his own behalf,
and on behalf of all others similarly situated,

    Plaintiff,

vs.                                                                                                Civ. No. 16-460 KG/KBM

JODY JENKINS and
JENKINS, WAGNON & YOUNG, P.C.,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants Jody Jenkins and Jenkins, Wagnon

& Young, P.C.'s Motion for Partial Summary Judgment on Plaintiff's Claims under the Fair

Debt Collection Practices Act ("FDCPA") and the New Mexico Unfair Practices Act ("UPA")

("Motion"), filed on January 10, 2018.  (Doc. 75).  Plaintiff responded on February 14, 2018, and

Defendants filed their Reply on March 15, 2018.  (Docs. 83 and 97).  Having considered the

Motion, the accompanying briefing, and the relevant evidence, the Court **GRANTS** the Motion

with respect to Plaintiff's FDCPA claim.  The Court declines to exercise supplemental

jurisdiction over the remaining state claims, and, therefore, remands this matter to state court for

final resolution.

A.  *Background*

    *Relevant Facts Viewed in the Light Most Favorable to Plaintiff*

On June 16, 2014, attorney Jody Jenkins ("Defendant Jenkins") filed suit in Second

Judicial District Court in the County of Bernalillo, New Mexico ("State District Court") on

behalf of debt buyer Autovest, L.L.C. ("Autovest") against Plaintiff Joshua Cordova and his

father (the "Lawsuit"). (Doc. 75-1) at 1-2. The Lawsuit arose from an auto loan that Plaintiff

and his father signed with Wells Fargo in 2006 to finance the purchase of a motor vehicle. *Id.* at

3. Plaintiff's loan agreement stated, "If we hire an attorney who is not our salaried employee to

collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits.

The maximum attorney's fee you will pay will be 15% of the amount you owe." *Id.* at 4.

The complaint in the Lawsuit alleged that Autovest was the owner and holder of the auto

loan contract, having acquired it from Wells Fargo. *Id.* at 1. The complaint further alleged that

Plaintiff defaulted on the auto loan and, as a result, Plaintiff was indebted to Autovest. *Id.*

According to Plaintiff, Plaintiff's sister was supposed to pay the loan because she was the

primary driver of the vehicle, but she failed to do so and the vehicle was repossessed before

Plaintiff knew she had stopped making payments. (Doc. 75-1) at 8, depo. at 28:8-22. Plaintiff

knew Autovest had filed the Lawsuit against him to recover the debt he owed, but "just never

took any action to clear it up." *Id.* at 9, depo. at 30:1-2.

Throughout the Lawsuit, neither Plaintiff nor his father filed responsive pleadings, the

State District Court did not hold any hearings, and Defendant Jenkins did not make any court

appearances. (Doc. 83-3) at 1. Subsequently, Defendant Jenkins filed a one-page Motion for

Default Judgment on behalf of Autovest, to which he attached a signed and notarized "Itemized

Affidavit in Support of Attorney's Fees" ("Fee Affidavit"). (Doc. 83-1). The Fee Affidavit

sought attorney's fees for the hours Defendants Jenkins and his law firm, Jenkins, Wagnon, and

Young, P.C. ("Defendant JWY") spent on the Lawsuit under the lodestar method.[1] *Id.* In

support of their request for fees, Defendant Jenkins stated, under oath, that Defendant JWY had

---

[1] The lodestar method determines attorney's fees by multiplying the reasonable number of hours
worked by a reasonable hourly fee. *See Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091,
1095 (D.N.M. 1999).

spent a total of 4.25 attorney hours, at a reasonable rate of $250 per hour, on the Lawsuit.  *Id.* at

2.  Defendants itemized the time expended on the Lawsuit as follows: (1) "[r]eceive and review

file and general demand letter – .5;" (2) "[d]raft Complaint, Summons, Affidavit in Support of

Complaint, and Non-Military affidavit – 1.0;" (3) "[f]ile Complaint/ Correspond with Process

Server – .5;" (4) "[d]raft letter to clerk to file return of service with certificate of mailing – .25;"

(5) "[d]raft Motion for Default Judgment and Final Judgment – 1.0; and" (6) "[m]iscellaneous

communications with client – 1.0."  *Id*. at 1.  Defendants sought a total of $1,062.50 in attorney's

fees and a total amount of court costs of $268.70.  *Id.* at 2.

On October 30, 2014, the State District Court granted Autovest's Motion for Default

Judgment.  (Doc. 83-3).  The Court also awarded Defendants $934.68 in attorney's fees, with

gross receipts tax included, which represented 15% of the debt as authorized by the loan

agreement.  *Id.* at 2.  Plaintiff, as of the date of completion of briefing on this Motion, has not

paid any portion of the default judgment, including the attorney's fees that the State District

Court awarded Defendants.  (Doc. 75-1) at 10, depo. at 31:2-12.

Plaintiff subsequently filed a Class Action Complaint for Damages ("Complaint") in

State District Court on October 29, 2015.  (Doc. 1-1) at 8–15.  Defendants were not served with

the Complaint until April 21, 2016, and Defendants removed the case to federal court on May

20, 2016.  (Doc. 1) at 1.  In the Complaint, Plaintiff alleges that Defendant Jenkins and

Defendant JWY submitted fraudulent attorney fee affidavits in their New Mexico debt collection

cases, including in the Lawsuit, resulting in hundreds of inflated judgments against Plaintiff and

other New Mexico residents.  (Doc. 1-1) at 8.  Plaintiff alleged violations of the FDCPA (Count

I) and UPA (Count II), and asserted that Defendants committed malicious abuse of process

(Count III) and unjust enrichment (Count V).  *Id.* at 13-15.

Regarding the Lawsuit, specifically, Plaintiff alleges that Defendant Jenkins did not

perform 4.25 hours of work.  In support of this allegation, Plaintiff attaches to the Complaint

several other nearly identical fee affidavits, which Defendant Jenkins submitted in other New

Mexico debt collection cases resolved by default judgments around the time the Lawsuit was

resolved.  *Id*. at 10, 16–23; (Doc. 1-2) at 1–11.  In those fee affidavits, like in the Lawsuit,

Defendant Jenkins claims that he performed 4.25 hours of work, with the same itemization of

attorney time as in the Lawsuit.  *Id*.  In addition, Plaintiff attaches to the Complaint a one-page

Motion for Default Judgment filed in the Lawsuit, along with five other nearly identical motions

for default judgment filed in those similar New Mexico cases.  (Doc. 1-2) at 11–16.  Plaintiff

alleges that the fee affidavits "do not reflect actual attorney time expended on each case."  (Doc.

1-1) at 11.  Plaintiff contends that Defendants' fee affidavits, therefore, contained false

statements, which violated the FDCPA and the UPA, and constituted malicious abuse of process

and unjust enrichment.[2]  *Id.*

With respect to the Lawsuit against Plaintiff, Defendant Jenkins testified at his

deposition, "The [Fee Affidavit] says the fees sought [were] based on the time that would be

charged, and anticipated time in executing. So that language says had this been an hourly case

where there were records kept, this is what I believe the time entries would have shown."[3]  (Doc.

75-1) at 17, depo. at 63:3-7.  Defendant Jenkins continued, "The amount of time that I have

given you in these affidavits is based upon what I believe to be the minimum amount of time I

have ever spent on one of these cases from start to finish." *Id.*at 18, depo. at 92:8-11.  Defendant

Jenkins further explained, "I did spend at least this much time . . . I think what the affidavit says

---

[2] The Court granted the parties' Stipulated Motion to Dismiss Plaintiff's Claim for Fraud (Doc. 68) on January 2, 2018.  (Doc. 69).

[3] Whenever the Court refers to testimony, it is deposition testimony unless otherwise noted.

is that it's time that would be charged in obtaining the judgment. So when it would be charged in obtaining the judgment, I'm using my opinion to say this is how much time I think would be incurred had I kept records of this type of work for this type of case." *Id.* at 17, depo. at 63:16, 18-23.

Defendant Jenkins also testified about the amount of time that he typically spent reviewing a civil complaint. Defendant Jenkins testified that usually he reviewed a civil complaint three or four times, and that he "probably spend[s] a quarter of an hour each time I'm looking at something. 15, 20 minutes. It could be longer. It could be shorter." (Doc. 83-7) at 4, depo. at 78:6-9, 80:23-25, 81:1-2. Referring to the history notes for the Lawsuit, Defendant Jenkins stated, "[I]n this particular case, it looks like there were several issues with the formatting of it based on the number of entries that are related to the people Tara Bratcher and Karli changing their time in June for changing the status back and forth meaning that there were multiple versions of this complaint that were drafted." *Id.* at 6, depo. at 88:10-16.

Additionally, Defendant Jenkins testified about the letter to the State District Court clerk regarding filing the return of service, stating that he did not recall if there was such a letter in the Lawsuit.[4] (Doc. 83-7) at 6, depo. at 85:16-17. He testified, "I know there was correspondence with the clerk about issuing the summons. And that would include a request that, you know, the clerk look at the file and issue the certificate of the state of the record." *Id.*, depo. at 85:18-21. Defendant Jenkins continued that the time entry for the letter to the court clerk in the Fee Affidavit is "an estimation of the time[,]" but that "there is time [spent] in sending the summons to the court and the affidavit of service and the certificate of mailing if it's substitute service like I believe this one was." *Id.*, depo. at 86:2-5. Defendant Jenkins asserted in his testimony, "I

---

[4] This letter is not in evidence. Additionally, it is unclear to which filing the return of service corresponds, but the Court assumes it is for the Complaint.

know that at some point *I told my staff* to put together a letter to send that to the clerk. *And I would not have necessarily signed off on that document* and they may have just electronically filed it as opposed to sending with it some kind of enclosure letter." *Id.*, depo. at 86:11-16 (emphasis added).

Karli Digiovanni is an employee of Defendant JWY. (Doc. 75-1) at 20, depo. 6:8-12. Ms. Digiovanni testified that she worked on the Lawsuit, but does not have a specific recollection of that work. *Id.* at 21, depo. at 10:13-18. Ms. Digiovanni knew that she worked on the Lawsuit only because her initials came up in the history notes that Defendant JWY maintained for the case. *Id.*, depo. at 10:19-22. Responding to Plaintiff's counsel's questions about whether Defendant Jenkins had spent 0.25 hours of attorney time drafting a letter to the clerk to file the return of service, whether the letter had ever been drafted for the case, or whether Defendant Jenkins filed the complaint or corresponded with the process server, Ms. Digiovanni repeatedly testified that she did not know whether the work had been completed. (Doc. 83-6) at 2, depo. at 85:5-14, 86:10-15. Ms. Digiovanni also did not know whether Defendant Jenkins spent one hour of time communicating with anyone from Autovest regarding its lawsuit against Plaintiff. *Id.* at 1, depo. at 84:18-22.

Ms. Digiovanni did testify that depending on the case, Defendant Jenkins would file the complaint or correspond with the process server. *Id.* at 2, depo. at 86:16-22. She also testified that she was sure that Defendant Jenkins filed complaints and corresponded with process servers on the vast majority of his cases, yet she could not remember a specific time when he actually completed those tasks. *Id.*, depo. at 86:23-25, 87:1-5. Ms. Digiovanni could not remember specific changes that had been made to the fee affidavit form since she started working at the

6

firm, but she knew the changes were on a "case-by-case" basis, so the court costs section would have changed with each case. *Id.* at 1, depo. at 84:2-5.

According to Ms. Digiovanni, the complaint, the itemized affidavit of attorney's fees, the motion for default judgment, the certificate as to the state of the record, and the military affidavit for any given case are created using templates that Defendant Jenkins drafted. (Doc. 75-1) at 25, depo. at 78:20-25, 79, 80:1-20. After she creates a document using a template, Defendant Jenkins reviews the document and fills in the blanks. *Id.* at 23, 25, depo. at 45:6-23, 46:11-13, 47:6-25, 48:1-20, 78:20-25, 79, 80:1-20.

Regarding how much time Defendant Jenkins typically spent reviewing a civil complaint, Ms. Digiovanni testified that "it would take maybe an hour up to several. It just depends." *Id.* at 24, depo. at 62:11-18. Ms. Digiovanni also testified that it was normal for Defendant Jenkins to spend an hour or two, or longer, reviewing a single civil complaint. *Id.*, depo. at 62:21-23. When Plaintiff's counsel asked Ms. Digiovanni whether it was her testimony under oath that Defendant Jenkins's usual practice was to take an hour or two to review a debt collection civil complaint, Ms. Digiovanni qualified her answer and said "[i]t was an estimate." *Id.*, depo. at 63:2-7.

Plaintiff testified that he did not have any evidence that Defendant Jenkins did *not* spend at least 4.25 hours of time on the Lawsuit. (Doc. 75-1) at 6, depo. at 23:6-8. Plaintiff admitted that while he did not know whether Defendant Jenkins spent 4.25 hours on the Lawsuit, he agreed it was possible that Defendant Jenkins spent 4.25 hours on the Lawsuit. *Id.* at 12-13, depo. at 51:14-20, 24-25; 52:1. Plaintiff conceded that he thought it was unreasonable for Defendant Jenkins to spend 4.25 hours on an entire lawsuit, implying that 4.25 hours was very little to spend on an entire case. *Id.* at 13, depo. at 52:7-10.

Plaintiff also testified that he did not have any evidence that Defendant Jenkins did *not* spend an hour communicating with his client during the course of the Lawsuit. *Id.* at 14, depo. at 53:7-16. Plaintiff testified that he did not have any evidence for any of the Complaint's claims other than what his lawyer may or may not have told him. *Id.* at 15, depo. at 56:13-20. Plaintiff testified that in terms of damages, he seeks only "the 900-and-some dollars that they want to get from me [in attorney's fees as part of the default judgment]." *Id.* at 10, depo. at 31:14-17. Plaintiff admitted that he had not paid any portion of the default judgment. *Id*, depo. at 31:2-12.

B. *The Motion for Summary Judgment*

With respect to Plaintiff's FDCPA claim, Defendants contend that the Fee Affidavit is not misleading, even to the least sophisticated consumer, because "it explicitly states that it contains an estimate of the attorney hours that would be spent on resolving the debt collection." (Doc. 75) at 12. Defendants favorably compare this case to an out-of-circuit case in which a request for attorney's fees in a complaint did not violate the FDCPA because it was merely an estimate of attorney time spent on the matter. *Id.* at 11-14 (citing *Elyazidi v. Suntrust Bank*, 780 F.3d 227 (4th Cir. 2015)). Defendants assert that not only does Plaintiff not have any evidence that Defendant Jenkins did *not* spend 4.25 hours on the Lawsuit, "the uncontroverted evidence in this case is that [Defendant] Jenkins performed at minimum the work listed in the Fee Affidavit, if not more." *Id.* at 15. Defendants additionally argue that the Fee Affidavit does not violate the FDCPA because it is a request to a court for attorney's fees, not a representation to Plaintiff as the debtor. *Id.* at 16-17.

Regarding Plaintiff's UPA claim, Defendants assert that "there is no evidence that [Defendant] Jenkins knowingly made any material misrepresentations to Plaintiff in connection with the [Lawsuit]." (Doc. 75) at 17. Additionally, Defendants contend that Plaintiff's UPA

claim fails "because Plaintiff has no evidence the Fee Affidavit contained misleading information." *Id.* Defendants argue that because Plaintiff has not paid the attorney's fees awarded to Defendants in the Lawsuit, he has not suffered "actual injury," and thus cannot prove the required "causal relationship between the false or misleading representation and his losses." *Id.* at 18, 21-22. Finally, Defendants challenge Plaintiff's UPA claim that is premised on the unconscionable trade practice theory, arguing that Plaintiff has not proven that Defendant Jenkins's conduct "took advantage of Plaintiff's lack of knowledge, and he has not established any facts showing a disparity between the price Plaintiff paid for any goods or services and the value he received for such goods or services." *Id.* at 22.

Plaintiff opposes Defendants' Motion in its entirety. (Doc. 83).

*C. Summary Judgment Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

*D. Discussion*

      *1.     FDCPA Claim (Count I)*

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e) (2012).  A *prima facie* case for violation of the FDCPA requires proof of the following four elements:

> (1) the plaintiff is any natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692c(d) for purposes of a cause of action pursuant to 15 U.S.C.A. 1692c or 15 U.S.C.A. 1692e(11);
>
> (2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes; 15 U.S.C.A. § 1692a(5);
>
> (3) the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and
>
> (4) the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A. § 1692a-1692o; 15 U.S.C.A. §1692a; 15 U.S.C.A. § 1692k.

*Duncan v. Citibank (S.D.), N.A.*, 2006 WL 4063023, at \*5 (D.N.M.) (quoting 29 CAUSES OF ACTION 2d 1 § 49 (2005)).

Plaintiff alleges that Defendants violated 15 U.S.C. § 1692e and § 1692f.  (Doc. 1-1) at 13; *see* (Doc. 83) at 7.  Under Section 1692e, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  A violation of that provision of the FDCPA includes, but is not limited to, the false representation of "the character, amount, or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  15 U.S.C. § 1692e(2).

Under Section 1692f, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  A violation of this provision of the FDCPA includes, but is not limited to, "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

To determine whether a debt collector has made a false representation or used unfair or unconscionable means to collect a debt, the Tenth Circuit has applied the "least sophisticated consumer" standard, which requires a court to consider how the least sophisticated consumer would interpret the debt collector's efforts.  *See Fouts v. Express Recovery Servs., Inc.*, 602 F. App'x 417, 421 (10th Cir. 2015) ("Even the 'least sophisticated consumer' would understand that Mr. Davis was not threatening to garnish Mr. Fouts's wages at that time.") (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993))); *Ferree v. Marianos*, 1997 WL 687693 at *1 (10th Cir.); *Russey v. Rankin*, 911 F.Supp. 1449, 1453-56 (D.N.M. 1995) (applying least sophisticated consumer standard).  "The test is how the least sophisticated consumer - one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer - understands the notice he or she receives."  *Ferree*, 1997 WL 687693, at *1 (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d. Cir. 1996)) (internal brackets omitted).  The hypothetical least sophisticated consumer, however, is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  *Id.* (citing *Clomon*, 988 F.2d at 1319).

The inquiry into whether there has been an FDCPA violation under Section 1692e does not end with a determination that a debt collector has made a false representation.  The Court must also consider the materiality of the false representation, because "[t]he FDCPA does not

11

result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless." *Maynard v. Bryan W. Cannon, P.C.*, 2010 WL 4487113, at *6 (10th Cir.)). "Materiality is an ordinary element of any federal claim based on a false or misleading statement." *Hahn v. Triumph P'ships*, 557 F.3d 755, 757 (7th Cir. 2009). "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *D'Avanzo v. Global Credit and Collection Corp.*, 2011 WL 2297697, at *4 (D.Colo.) (quoting *Hahn*, 557 F.3d at 758). "Materiality is assessed in light of the purpose of the FDCPA, which is to 'provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).' Thus, a false statement is material if it would impact the least sophisticated consumer's decisions with respect to a debt." *Hudspeth v. Capital Management Servs., L.P.*, 2013 WL 674019, at * 4 (D. Colo.) (quoting *Hahn*, 557 F.3d at 757-58); *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) ("In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.") (citing *Hahn*, 557 F.3d at 757).

There is no dispute between the parties that, for the purposes of the FDCPA, Plaintiff is a consumer, the debt at issue in the Lawsuit arose out of a transaction for personal, family, or household purposes, and that Defendants Jenkins and JWY are debt collectors.[5] The only dispute is whether Defendants violated Section 1692e(2) and/or Section 1692f(1). *See* (Doc. 83)

---

[5] Under 15 U.S.C. § 1692a(3), a consumer is "any natural person obligated or allegedly obligated to pay any debt." Under 15 U.S.C. § 1692a(6), a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

at 7. With respect to Section 1692e(2), the only dispute is whether the Fee Affidavit falsely represented "the character, amount, or legal status of" the attorney's fees Defendants were awarded, and, similarly, whether the Fee Affidavit falsely represented the services Defendant Jenkins rendered or the compensation Defendant Jenkins could lawfully receive for his debt collection work on behalf of Autovest. *See* 15 U.S.C. § 1692e(2). Essentially, the Court must determine whether any part of the Fee Affidavit was materially false.

Regarding Section 1692f(1), the only dispute is whether Defendants attempted to collect attorney's fees that were not "expressly authorized by the agreement creating the debt or permitted by law." *See* 15 U.S.C. §1692f(1). Plaintiff implies that if the attorney's fees were premised upon materially false statements in the Fee Affidavit, Defendants were not permitted by law to collect them. *See* (Doc. 83) at 7. Again, the threshold inquiry for the Court is whether any part of the Fee Affidavit was materially false.

Defendants have provided Plaintiff's deposition testimony in which he stated that he did not have any evidence that Defendant Jenkins did *not* spend at least 4.25 hours of time on the Lawsuit. (Doc. 75-1) at 6, depo. at 23:6-8. Plaintiff also testified that he did not have any evidence that Defendant Jenkins did *not* spend an hour communicating with his client during the course of the case. *Id.* at 14, depo. at 53:7-16. Indeed, Plaintiff testified that he did not have any evidence for any of the Complaint's claims other than what his lawyer may or may not have told him. *Id.* at 15, depo. at 56:13-20.

Nonetheless, Plaintiff has presented evidence that the Fee Affidavit entry of 0.25 hours of attorney time expended with respect to the letter to the court clerk about filing the return of service was false. Defendant Jenkins testified, "I know that at some point *I told my staff* to put together a letter to send that to the clerk. And *I would not have necessarily signed off on that*

*document* and they may have just electronically filed it as opposed to sending with it some kind

of enclosure letter." (Doc. 83-7) at 6, depo. at 86:11-16 (emphasis added).  At first glance,

viewing this testimony in the light most favorable to Plaintiff, a reasonable jury could find that

putting together a letter means drafting it and that Defendant Jenkins did not draft the letter; his

staff did.  Defendant Jenkins added that he would not have necessarily signed off on that letter, a

strange statement if he had, in fact, drafted the letter for his own signature.  In addition, a

reasonable jury could find that the Fee Affidavit would certainly indicate to the least

sophisticated consumer that Defendant Jenkins had actually drafted the letter because he was

requesting attorney's fees for that task, and the Fee Affidavit was filed at the end of the case

when Defendant Jenkins would have already completed that work.

However, even if Defendant Jenkins falsely stated in the Fee Affidavit that he drafted the

letter to the clerk when he did not, that false statement must be material to be actionable under

the FDCPA.  The amount of fees Defendant Jenkins requested based on that false statement is *de*

*minimis* and, therefore, not material.  Defendant Jenkins requested attorney's fees for 0.25 hours

of time for the letter at an hourly rate of $250.00, or $62.50.[6]  (Doc. 83-1), at 1-2.  That amount,

$62.50, is 6.68% of the attorney's fees the State District Court awarded, and is 1.07% of

Plaintiff's underlying debt of $5,823.58 on the loan, which does not include pre-charge-off

interest and costs, or pre-judgment interest.  No reasonable jury could find that having to pay

$62.50 would impact the least sophisticated consumer's decision to not pay the $5,823.58

---

[6] The State District Court awarded attorney's fees including gross receipts tax of $934.68, but it
is unclear whether the court calculated the amount of gross receipts tax or simply awarded 15%
of Plaintiff's debt since Defendants had requested more than 15% of Plaintiff's debt, which was
not permitted by the loan agreement. *See* (Doc. 83-3) at 1-2.  Additionally, Defendants are
located in Texas, but it is unclear whether the State District Court ordered gross receipts tax
based on New Mexico rates or Texas rates. *See id.*  Either way, gross receipts tax on $62.50 is
negligible for the purposes of the Court's materiality analysis, and therefore the Court determines
materiality based on whether Defendant Jenkins falsely represented that he was owed $62.50.

underlying debt, or not pay the $934.68 fee award itself. *See Hudspeth*, 2013 WL 674019, at * 4.

In light of this *de minimis* amount, the Court concludes as a matter of law that Defendant Jenkins

did not make a material, false statement in the Fee Affidavit.[7]

Plaintiff also does himself no favors in bringing forward specific facts showing a genuine

issue for trial on those dispositive matters for which he carries the burden of proof. *See Kannady*

*v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (internal quotation marks and citation

omitted). Because Defendants have shown that they are entitled to summary judgment on the

Section 1692e(2) claim, Plaintiff's burden is to come forward with evidence that statements in

the Fee Affidavit are materially false. Plaintiff has not done so. In light of Plaintiff's clear

testimony that he did not have any evidence showing that the Fee Affidavit was false, and

Plaintiff's lack of evidence concerning materiality, the Court must grant summary judgment in

favor of Defendants on Plaintiff's Section 1692e(2) claim.[8] The Court also grants summary

judgment in favor of Defendants on Plaintiff's Section 1692f claim because even if Defendants

attempted to collect attorney's fees that were not permitted by law due to a false statement in the

Fee Affidavit, that statement was not material.[9]

---

[7] The Court acknowledges that Plaintiff presented with his Complaint multiple fee affidavits signed by Defendant Jenkins itemizing identical entries for attorney time spent on different cases. (Doc. 1-1), at 18-23. The Court emphasizes that regardless of whether an attorney is a debt collector, every attorney is obligated to be assiduously truthful and transparent when submitting fee affidavits, especially because they are submitted to a court. Nevertheless, concerning the Fee Affidavit Defendant Jenkins submitted for just this case, and applying the appropriate standard, the Court concludes that Defendant Jenkins's statement regarding the letter to the clerk is not material.

[8] The Court notes that Plaintiff failed to address Defendants' materiality argument in his Response.

[9] Because the Court holds that Defendant Jenkins's Fee Affidavit does not violate the FDCPA for the aforementioned reasons, it is not necessary for the Court to discuss Defendants' other arguments in favor of summary judgment on the FDCPA claims.

2.      *Supplemental Jurisdiction over Counts II, III, and V*

Having granted summary judgment in favor of Defendants on Plaintiff's FDCPA claim,

Count I, what remain are the following state claims: the UPA claim, Count II; the malicious

abuse of process claim, Count III; and the unjust enrichment claim, Count V.  Under 28 U.S.C. §

1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over

state claims if "the district court has dismissed all claims over which it has original jurisdiction."

The Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving

only issues of state law, the federal court should decline the exercise of [supplemental]

jurisdiction…." *Brooks v. Gaenzle,* 614 F.3d 1213, 1229 (10th Cir. 2010).  "Notions of comity

and federalism demand that a state court try its own lawsuits, absent compelling reasons to the

contrary." *Thatcher Enterprises v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

*Thatcher* instructed that "discretion should be exercised in those cases in which, given the nature

and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served

by retaining jurisdiction." *Id.*

Here, the interests of judicial economy, convenience, fairness, and comity would not be

served by retaining supplemental jurisdiction over the UPA claim, the malicious abuse of process

claim, or the unjust enrichment claim.  Because resolution of these claims requires the

application of New Mexico law, it is more fair and efficient for the state court to resolve them.

Following Tenth Circuit precedent, the Court declines to exercise supplemental jurisdiction over

Plaintiff's remaining claims.  Consequently, the Court will remand the remainder of this case to

the Second Judicial District Court, County of Bernalillo, State of New Mexico.

**IT IS, THEREFORE, ORDERED** that

1.  Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims under the Fair Debt Collection Practices Act ("FDCPA") and the New Mexico Unfair Practices Act ("UPA") (Doc. 75) is granted in part;

2.  summary judgment will be entered in favor of Defendants on Plaintiff's FDCPA claim (Count I of the Complaint);

3.  the FDCPA claim (Count I of the Complaint) will be dismissed with prejudice;

4.  the Court declines to exercise supplemental jurisdiction over Counts II, III, and V; and

5.  the remainder of this case will be remanded to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE