IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSHUA CORDOVA, on his own behalf,
and on behalf of all others similarly situated,

      Plaintiff,

v.                                    1:16-cv-00460-KG-KBM

JODY JENKINS and
JENKINS, WAGNON & YOUNG, P.C.,

      Defendants.

## PLAINTIFF'S BRIEF REGARDING AMOUNT IN CONTROVERSY

Plaintiff Joshua Cordova submits this Brief Regarding Amount in Controversy pursuant to the Court's Amended Memorandum Opinion and Order [Doc. 108].  Because Defendants fail to establish the amount in controversy required to support diversity jurisdiction, this case should be remanded to New Mexico State District Court.

### I.  Law Regarding Removal Jurisdiction

"If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. §1441(a) to remove the action to the federal district court 'embracing the place where such action is pending.'"  *Thompson v. Intel Corp.,* 2012 WL 3860748, at *4.  Because Federal Courts are courts of limited jurisdiction, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.  *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.1995).  "Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand."  *Bonadeo v. Lujan,* No. CIV 08–0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009).

The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." *McPhail v. Deere & Co.,* 529 F.3d at 953 (10th Cir.2008). The Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record." *Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.,* 149 Fed.Appx. 775, 778 (10th Cir.2005). Specifically, the New Mexico Federal District Court has explained that:

> The Tenth Circuit has identified the means upon which a defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint; (ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward; and (iii) the defendant may rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim, because the plaintiff's estimate of its claim is a proper means of supporting the allegations in the notice of removal.

*Ullman v. Safeway Ins. Co.,* 995 F. Supp. 2d 1196, 1215 (D.N.M. 2013).

Notice of removal must be filed within thirty days from the date when the case qualifies for federal jurisdiction. 28 U.S.C. §1446(b). After the expiration of the deadline for removal,

> defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

*Carrillo v. MCS Indus., Inc.*, No. CIV 12-0573 JB/WPL, 2012 WL 5378300, at *9 (D.N.M. Oct. 15, 2012) (citing 14 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 3733, at 651–659 (4th ed.2009)).

## II. Law Regarding Amount in Controversy

Pursuant to 28 U.S.C. §1332(a), a Federal District Court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. *See Johnson v. Rodrigues,* 226 F.3d 1103, 1107 (10th Cir. 2000). The

$75,000 amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." *Valdez v. Metro. Prop. & Cas. Ins. Co*., 867 F.Supp.2d 1143, 1163 (D.N.M. 2012). Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. *See McPhail v. Deere & Co.,* 529 F.3d at 953. A defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955.

The jurisdictional amount is subject to rules of "non-aggregation" in class actions. Namely, the $75,000.00 amount must be satisfied **as between a single plaintiff and a single defendant** for a federal district court to have original jurisdiction. *Martinez v. Martinez,* No. CIV 09–0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. Mar. 30, 2010). Thus, actual damages are included in the calculation of the $75,000, but in a class action, the actual damages of class members are not aggregated to reach the amount in controversy. *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Punitive damages are included in the amount in controversy, but again, they are not aggregated. *Martin v. Franklin Capital Corp*., 251 F.3d 1284, 1293 (10th Cir. 2001), abrogated on other grounds by *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014). Attorney's fees are also included in the amount in controversy, but yet again, attorney's fees are not aggregated and must be allocated between class members. *Martin*, 251 F.3d at 1293 (10th Cir. 2001).

### III. Defendants Fail to Meet the Amount in Controversy Requirement

Defendants fail to establish the possibility that the conflict between any single plaintiff and a single defendant in this case will involve an amount in controversy exceeding $75,000. **In their Brief, Defendants fail altogether to mention the rules of non-aggregation**. Indeed, **Defendants explicitly aggregate actual damages** in an attempt to show that the amount in

controversy is met.  *See* Brief at 7 (multiplying Plaintiff's damages of $1,062.50 by 500 to reach a figure exceeding the jurisdictional amount).   Defendants' failure to cite controlling case law, and attempt to apply the facts of this case in a manner contrary to controlling law, is troubling.

A closer look at the facts of this case demonstrates that no individual plaintiff could possibly have $75,000 at issue in this case.  In his Class Action Complaint for Damages, Plaintiff alleged that Defendants, Texas lawyer Jody Jenkins and his law firm, Jenkins, Wagnon & Young, P.C., submitted fraudulent attorney fee affidavits in their New Mexico debt collection cases.  [Doc. 1-1 at 8, ¶1]  As a result, Defendants obtained hundreds of inflated judgments against New Mexico residents.  [Doc. 1-1 at 8, ¶2]  Plaintiff alleged that a judgment against him was inflated by $1,062.50.  [Doc. 1-1 at 10, ¶21]  This $1,062.50 constituted Plaintiff's actual damages.  Plaintiff alleged that Defendants submitted the same fraudulent fee affidavit for $1,062.50 in other class members' lawsuits.  [Doc. 1-1 at 10, ¶24]  Thus, class members' actual damages were also $1,062.50.[1]

Defendants attempt to argue that Plaintiff's damages were higher by reference to a "Court-Annexed Arbitration Certification" submitted in State Court.  *See* [Doc. 1-1 at 7]; *also attached as* Exhibit 1.  New Mexico's Second Judicial District requires arbitration of cases in which "no party seeks relief other than a money judgment and no party seeks an amount in excess of twenty-five thousand dollars ($25,000) from any party or combination of parties, exclusive of punitive damages, interest, costs, and attorney fees."   LR2-603, Section II(A) NMRA.   Parties must submit a Court-Annexed Arbitration Certification together with their initial complaint, indicating whether the case must be referred to arbitration.  *Id*. at Section II(B).

---

[1] Plaintiff's settlement communication supports this position.  Far from seeking $25,000 in actual damages per class member, Plaintiff simply requested "Repayment of all amounts collected based on attorney fee affidavits" plus "a reasonable amount, to be negotiated, reflecting potential additional liability, including statutory and punitive damages."  *See* Exhibit 2.

Cases subject to arbitration are decided in fast, informal proceedings adjudicated by attorneys appointed from the district. *Id*. at Section V. The rules were designed to create an efficient way to resolve small dollar cases, and were not intended to accommodate class actions. There is no "non-aggregation" rule under the Second Judicial District's arbitration rules, so the value of all of the party's relief, including class relief, is added together to determine whether arbitration is appropriate.

In this case, Plaintiff certified that more than $25,000 was at issue because this case is a class action involving approximately 500 people [Doc. 1-1 at 11-12, ¶35], each with $1,062.50 in actual damages, for a total of $531,250. Defendants intentionally misquote the Court-Annexed Arbitration Certification, stating in their Brief that "In Plaintiff's Court-Annexed Arbitration Certification accompanying his Complaint, Plaintiff explicitly alleged that 'his actual damages are in excess of $25,000 exclusive of punitive damages, interest, costs and attorney's fees.'" *See* Brief at 5. **The allegedly quoted language does not appear in the Court-Annexed Arbitration Certification**. Instead, what the Court-Annexed Arbitration Certification actually states is "This party seeks relief other than a money judgment and/or seeks relief in excess of Twenty-Five Thousand Dollars ($25,000), exclusive of punitive damages, interest, costs, and attorney's fees." *See* Exhibit 1. This was an accurate statement; the class in aggregate sought considerably more than $25,000, and this case was not appropriate for arbitration. Defendants misquoted the Court-Annexed Arbitration Certification to make it appear that Plaintiff was referring to his individual actual damages.

Plaintiff's request for punitive damages does not get any individual class member's claim anywhere close to $75,000. The Due Process Clause of the United States Constitution places limits on an award of punitive damages. "Our jurisprudence and the principles it has now

established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524, 155 L. Ed. 2d 585 (2003).  In cases involving substantial actual damages, the Tenth Circuit Court of Appeals has held that 1:1 ratios of punitive to actual damages may be appropriate.  *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1073 (10th Cir. 2016).  Here, applying a 2:1 ratio of punitive damages to each class member's actual damages of $1,062.50 produces a punitive damage award of $2,125 per class member.

Statutory damages are no help to Defendants either.  Defendants claim that under the Unfair Practices Act ("UPA"), each class member would have treble actual damages of $25,000, or $75,000.  Setting aside the fact that Defendants have no basis to assert that each class member's actual damages are $25,000, in a class action, only the named Plaintiff is entitled to treble damages.  NMSA §57-12-10(E); *Brooks v. Norwest Corp.*, 2004-NMCA-134, ¶45, 136 N.M. 599, 613, 103 P.3d 39, 53.  Moreover, treble damages and punitive damages for the same conduct are duplicative, and a party must elect between them.  *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 20, 110 N.M. 314, 320, 795 P.2d 1006, 1012.

Finally, there is no plausible way that attorney's fees could move any individual class member's amount in controversy to $75,000.  According to Plaintiff's Complaint and Defendant's Brief, there are approximately 500 class members.  *See* [Doc. 1-1 at 11-12, ¶35]; Brief at 6.  Even if Plaintiff's attorney's fees were $1,000,000, each class member's share would only be $2,000.  A more plausible amount of attorney's fees would be $100,000.  Plaintiff's current attorney's fees are $41,938.55.  *See* Exhibit 3 (Declaration of Nicholas Mattison).  Each class member's share of $100,000 would be $200.

Adding up each class member's potential amount in controversy, as calculated above, produces the following calculation: $1,062.50 actual damages + $2,125 punitive damages + $200 attorney's fees = $3,387.50.  This is a far cry from the $75,000 required to trigger the Court's diversity jurisdiction.

**IV. There is No Jurisdiction Under the Class Action Fairness Act**

Defendants concede that they "did not remove this matter pursuant to the Class Action Fairness Act" ("CAFA").  *See* Brief at 2.  As noted above, "defendants may not add completely new grounds for removal" after the deadline for removal has passed.  *Carrillo,* 2012 WL 5378300, at *9 (internal quotation marks and citation omitted).  Defendants are barred from now claiming the CAFA as a basis for jurisdiction.

Moreover, there was a reason that Defendants' highly capable team of lawyers did not even attempt to remove under the CAFA: because there is no way that CAFA applies.  Under the CAFA, class actions meeting certain requirements may be removed to federal court even if they do not meet the traditional requirements for federal question or diversity jurisdiction.  28 U.S.C. 1332(d).  One of these requirements is that the aggregate matter in controversy exceeds "$5,000,000, exclusive of interest and costs."  28 U.S.C. 1332(d)(2).  This includes punitive damages and attorney's fees.  Here, using the calculations set forth above yields the following aggregate damages: (500 x 1062.50) + (500 x $2,125) + $100,000 = $1,693,750.  This is far less than the requisite amount in controversy pursuant to the CAFA.

Defendants drive home the absurdity of their position by insisting that Plaintiff's modest 500-member class has damages "exceeding $37.5 million, even putting aside punitive damages." *See* Brief at 8.  This outrageous exaggeration relies on all of the mischaracterizations and

misstatements noted above.  The Court should grant little credence to a party willing to present it

with such arguments.

WHEREFORE, Plaintiff respectfully requests that the Court remand this matter to the

New Mexico State District Court.

Respectfully submitted,

*/s/ Nicholas H. Mattison*
Nicholas H. Mattison
Feferman, Warren & Mattison
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773


## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018 I filed the foregoing pleading electronically
through the Courts's CM/ECF File System, which caused all parties or counsel to be served by
electronic means.

*/s/ Nicholas H. Mattison*